RINEY & MAYFIELD
Thomas C. Riney, SBN: 16935100
W. Heath Hendricks, SBN: 240556451
320 South Polk Street, Suite 600
Amarillo, Texas 79101
Telephone:  (806) 468-3200
Facsimile:  (806) 376-4509
Email: triney@rineymayfield.com
Email: hhendricks@rineymayfield.com
          -and-
Michael R. Johnson (*Pro Hac Vice*)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
Salt Lake City, Utah 84111
Telephone:  (801) 532-1500
Facsimile:  (801) 532-7543
Email:  mjohnson@rqn.com
*Attorneys for Plaintiff  Rabo AgriFinance LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| IN RE:<br><br>WAGGONER CATTLE, LLC, ET AL.<br><br>    Debtors. | **Chapter 11**<br><br>**CASE NO. 18-20126-11-rlj**<br>**Jointly Administered** |
|---|---|
| RABO AGRIFINANCE LLC, fka RABO AGRIFINANCE, INC.,<br><br>    *Plaintiff,*<br>v.<br><br>LONE STAR STATE BANK OF WEST TEXAS,<br><br>    *Defendant.* | ADV. PROC. NO. _____ |

**COMPLAINT TO DETERMINE THE NATURE, EXTENT AND/OR VALIDITY OF ASSERTED LIENS ON CLAIMS AND CAUSES OF ACTION**

Plaintiff Rabo AgriFinance LLC, fka Rabo Agrifinance, Inc. ("**RAF**"), through counsel, hereby complains of and for its causes of action against Defendant, Lone Star State Bank of West Texas ("**LSB**"), alleges as follows:

**JURISDICTION AND VENUE**

1. On April 9, 2018, each of the following related entities (collectively, the "**Waggoner Corporate Debtors**") filed separate Chapter 11 petitions with the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**"): (a) Waggoner Cattle, LLC, Case No. 18-20126, (b) Circle W of Dimmitt, Inc., Case No. 18-20127, (c) Bugtussle Cattle, LLC, Case No. 18-20128, and (d) Cliff Hanger Cattle, LLC, Case No. 18-20129.

2. The separate Chapter 11 cases of each of the Waggoner Corporate Debtors are being jointly administered under the case number for Waggoner Cattle, LLC, Case No. 18-20126.

3. Michael Quint Waggoner ("**Quint Waggoner**") is the owner and manager/president, as applicable, of all of the Waggoner Corporate Debtors.

4. On April 9, 2018, Quint Waggoner filed his own separate Chapter 11 petition with the Bankruptcy Court, Case No. 18-20125.

5. The Waggoner Corporate Debtors and Quint Waggoner are collectively referred to herein as the "**Waggoner Debtors**."

2

6. RAF is a substantial creditor of each of the Waggoner Debtors as evidenced by the Schedules and Statements filed by the respective Waggoner Debtors in each of their Chapter 11 cases, and also as evidenced by the proofs of claim filed by RAF in the Waggoner Debtors' Chapter 11 cases.

7. Indeed, as of the April 9, 2018 Petition Date, RAF asserts that it was owed the total sum of $13,104,815.50 by each of the Waggoner Debtors, jointly and severally.

8. While RAF's claims against the Waggoner Debtors are secured by various items of real and personal property that are owned by certain of the Waggoner Debtors, RAF understands and believes that its claims are substantially undersecured and that it will have general unsecured claims against each of the Waggoner Debtors in the many millions of dollars.

9. Indeed, as noted in the proofs of claim filed by RAF in the Waggoner Debtors' Chapter 11 cases, RAF believes that the total value of the collateral securing its claims against the Waggoner Debtors is less than $1,000,000, and that the unsecured portion of its claims is in excess of $12,000,000.

10. Upon information and belief, Defendant LSB also is a substantial creditor of each of the Waggoner Debtors.

11. This Court has jurisdiction over the subject matter of this action and over each of the parties to this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a), (b) and (c), and Fed. R. Bankr. P. 7001.

12. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(K) and

(O) because this is a proceeding to determine the validity, extent or priority of liens asserted by LSB, and because this proceeding will affect the liquidation of the assets of the Waggoner Debtors' estates.

13. Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. § 1409, because the Waggoner Debtors' Chapter 11 cases are pending before the Bankruptcy Court.

## GENERAL ALLEGATIONS

14. As noted above, RAF is a substantial creditor of each of the Waggoner Debtors and, as such, is entitled to receive both the value of its collateral from the bankruptcy estates of the Waggoner Debtors on account of its secured claims along with its pro rata share of any distributions made to unsecured creditors on account of its unsecured claims.

15. As noted above, LSB also is a substantial creditor of each of the Waggoner Debtors and, upon information and belief, was owed in excess of $11,000,000 as of the April 9, 2018 Petition Date.

16. For example, in the Chapter 11 case filed by Waggoner Cattle, LLC, LSB filed Proof of Claim 7-1 on August 29, 2018, asserting a claim against Waggoner Cattle, LLC in the amount of $11,815,300.69. Upon information and belief, LSB filed similar claims (collectively, the "**LSB Claim**") in the same amount in the Chapter 11 cases filed by the remaining Waggoner Debtors as well.

17. As part of the LSB Claim, LSB asserts that it has a properly perfected lien on and security interest in various items of personal property owned by each of the Waggoner

4

Debtors, including all general intangibles.

18. Furthermore, in the Waggoner Debtors' Chapter 11 cases and in related proceedings, LSB has contended that its lien on general intangibles means that it has a perfected lien on (a) any claims that any of the Waggoner Debtors had or could assert against RAF as of the April 9, 2018 Petition Date, and (b) any additional claims that any of the Waggoner Debtors have or could assert against RAF by virtue of their bankruptcy filings, including avoidance claims under Chapter 5 of the Bankruptcy Code.

19. For example, in its *Reply of Lone Star State Bank of West Texas to Rabo AgriFinance, LLC's Memorandum in Opposition to Lone Star State Bank's Motion for Order Granting Leave, Standing, and Authority to Commence, Prosecute, and Settle Causes of Action on Behalf of the Debtors' Estates Against Rabo AgriFinance, LLC f/k/a Rabo Agrifinance, Inc., and Among the Debtors*, filed in the Waggoner Cattle, LLC case on July 30, 2018 as Dkt. 146, LSB states that "[b]ecause Lone Star already has a first-lien position, any recovery on either Lone Star's claims *or the claims of the Waggoner Entities* will first go to Lone Star, whether pursued by Lone Star or any other person." [*Id.*, pg. 3]

20. Furthermore, in the adversary complaint that LSB has filed in the Waggoner Debtors' Chapter 11 cases (jointly administered under Bankruptcy Case No. 18-20126, the Waggoner Cattle, LLC case, as the lead case) against RAF in Adversary No. 18-02007-rlj, LSB asserts that it is entitled to receive, as a secured creditor, the first proceeds of any Chapter 5 avoidance claims that the Waggoner Debtors might have against RAF, with unsecured creditors

sharing in the proceeds only <u>after</u> LSB has been paid in full.

21.   In its First Cause of Action, for example, LSB asserts that the "fraudulently-transferred collateral and proceeds in good conscience belongs or should be paid to Lone Star, *which has a perfected first lien on such fraudulently-transferred assets and proceeds . . .*" [Complaint, ¶75 (emphasis supplied)]  LSB also claims a lien on and first priority security interest in any recoveries arising from its Second, Third, and Sixth Causes of Action.  [*Id.,* ¶¶ 13-15]

22.   While the Court has now determined that LSB lacks standing to assert avoidance claims belonging to the Debtors, if those claims are later asserted by the Debtors LSB will likely contend that it has a first priority lien on any recoveries received on account of those claims.

23.   RAF has filed this Complaint because it disputes LSB's assertion that its pre-petition lien on and security interest in the general intangibles of the Waggoner Debtors entitles it to recover and collect, as a secured creditor, the proceeds of claims that the Waggoner Debtors or some other estate fiduciary might assert against RAF, whether or not such claims existed as of the April 9, 2018 Petition Date or only arose thereafter by virtue of the Waggoner Debtors' Chapter 11 filings.

24.   Specifically, with respect to any claims that the Waggoner Debtors had against RAF that existed as of the April 9, 2018 Petition Date, LSB's lien on and security interest in the general intangibles of the Waggoner Debtors would not extend to any such claims to the extent

6

such claims are "commercial tort claims" as defined by the Texas Uniform Commercial Code.

25. Furthermore, with respect to any claims that the Waggoner Debtors could assert against RAF as a result of their bankruptcy filings, such as state and federal fraudulent transfer claims brought under Sections 544 or 548 of the Bankruptcy Code, LSB has no lien on or security interest in those claims, or their proceeds, as a matter of law.

## FIRST CLAIM FOR RELIEF
*(Declaratory Relief Regarding LSB's Alleged Lien on Pre-Petition Commercial Tort Claims)*

26. RAF realleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

27. As set forth above, LSB asserts that some of the Waggoner Debtors may have had claims against RAF that existed as of the April 9, 2018 Petition Date, and that LSB has a perfected lien on those claims, and any proceeds thereof, by virtue of its prepetition lien on and security interest in the general intangibles of the Waggoner Debtors.

28. RAF, in its capacity as a substantial unsecured creditor of the Waggoner Debtors' estates, disputes that the Waggoner Debtors had any valid claims against RAF as of the April 9, 2018 Petition Date and it also asserts that, even if such claims did exist, LSB's lien on and security interest in the general intangibles of the Waggoner Debtors would not extend to any claims constituting commercial tort claims.

29. 28 U.S.C. § 157(b)(2)(B) provides that the Bankruptcy Court may hear and determine all "core proceedings arising under title 11, or arising in a case under title 11," and the statute further defines core proceedings to include "determinations of the validity, extent, or

priority of liens," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship."

30. Federal Rule of Bankruptcy Procedure 7001 defines an adversary proceeding to include (a) "a proceeding to determine the validity, priority, or extent of a lien or other interest in property," and (b) "a proceeding to obtain a declaratory judgment" regarding the validity, priority or extent of any lien or other interest in property.

31. The Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 et seq., specifically authorizes a federal court to "declare the rights and other legal relations of any interested party" regarding an actual controversy within its jurisdiction.

32. There is an actual controversy before the Court regarding the validity, priority or extent of LSB's pre-petition liens and security interests in the general intangibles of the Waggoner Debtors, and whether those pre-petition liens and security interests encumber commercial tort claims belonging to the Waggoner Debtors or the proceeds thereof.

33. The Uniform Commercial Code defines a "commercial tort claim" as a "claim arising in tort with respect to which (A) the claimant is an organization; or (B) the claimant is an individual and the claim:   (i) arose in the course of the claimant's business or profession; and (ii) does not include damages arising out of personal injury to or the death of an individual."  Tex. Bus. & Comm. Code, § 9.102(13).

34. Pursuant to Section 9.108 of the Texas Uniform Commercial Code, a creditor such as LSB can only obtain a lien on a "commercial tort claim" if the creditor describes the commercial tort claim with particularity.  Tex. Bus. & Comm. Code § 9-108(e).

8

35. In other words, while it is generally permissible for a creditor in a security agreement and a UCC filing to describe collateral generally by type, such as "all inventory," "all equipment," etc., such a generalized description is insufficient as a matter of law for a commercial tort claim.

36. Rather, to properly perfect a lien on and security interest in a commercial tort claim, the creditor must describe the claim with particularity, including identification of the type of claim that exists and the person or entity against whom such a claim exists.

37. Furthermore, the Texas Uniform Commercial Code does not permit commercial tort claims to be transferred through an after-acquired property clause. Tex. Bus. & Comm. Code § 9.204(b)(2) ("A security interest does not attach under a term constituting an after-acquired property clause to . . . a commercial tort claim."). In other words, a creditor may only take a lien on and a security interest in a commercial tort claim of a debtor if the specifically described commercial tort claim actually existed as of the effective date of the lender's security agreement.

38. Here, upon information and belief, the effective date of the loan and security documents between LSB and the Waggoner Debtors pre-dated any business dealings between the Waggoner Debtors and RAF and, accordingly, the Waggoner Debtors could not have had any commercial tort claims against RAF as of the effective date of LSB's loan and security documents.

39. Moreover, and in any event, LSB's loan and security documents do not purport to take a lien on any commercial tort claims belonging to the Waggoner Debtors and, even if they

9

did, there are no commercial tort claims described in those loan and security documents meeting the specificity requirements of the Uniform Commercial Code.

    40.    Accordingly, the Court should find and declare as follows:

    a.    LSB's liens on and security interests in the general intangibles of the Waggoner Debtors, along with all other LSB liens on and security interests in the personal property of the Waggoner Debtors, to the extent otherwise valid and unavoidable, do not extend to any commercial tort claims that any of the Waggoner Debtors had, against RAF or any other parties, as of the April 9, 2018 Petition Date, or to the proceeds of such claims; and

    b.    If and to the extent the Waggoner Debtors, or any of them, receive any proceeds of any commercial tort claims in their Chapter 11 cases, the proceeds will be unencumbered assets of the applicable bankruptcy estate and available to pay the claims of all creditors of such bankruptcy estate, including unsecured creditors.

## SECOND CLAIM FOR RELIEF
*(Declaratory Relief Regarding LSB's Alleged Lien on Chapter 5 Avoidance Claims)*

    41.    RAF realleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

    42.    As set forth above, LSB also asserts that at least some of the Waggoner Debtors have Chapter 5 avoidance claims against RAF arising from their bankruptcy filings, including claims under Sections 544 and 548 of the Bankruptcy Code and the Texas Uniform Fraudulent Transfer Act, and that LSB's perfected liens on and security interests in the general intangibles of the Waggoner Debtors also encumber those claims and the proceeds thereof.

43.     RAF, in its capacity as a substantial unsecured creditor of the Waggoner Debtors' estates, disputes that LSB's liens on and security interests in the general intangibles of the Waggoner Debtors extends to any Chapter 5 avoidance claims that the Waggoner Debtors might have, including but not limited to the Chapter 5 avoidance claims that LSB attempted to assert against RAF in Adversary No. 18-02007-rlj or any other avoidance claims against any other parties.

44.     28 U.S.C. § 157(b)(2)(B) provides that the Bankruptcy Court may hear and determine all "core proceedings arising under title 11, or arising in a case under title 11," and the statute further defines core proceedings to include "determinations of the validity, extent, or priority of liens," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship."

45.     Federal Rule of Bankruptcy Procedure 7001 defines an adversary proceeding to include (a) "a proceeding to determine the validity, priority, or extent of a lien or other interest in property," and (b) "a proceeding to obtain a declaratory judgment" regarding the validity, priority or extent of any lien or other interest in property.

46.     The Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201 et seq., specifically authorizes the federal courts to "declare the rights and other legal relations of any interested party" regarding an actual controversy within its jurisdiction.

47.     There is an actual controversy before the Court regarding the validity, priority or extent of LSB's alleged liens on the Waggoner Debtors' Chapter 5 avoidance claims.

48.     As a matter of law, a pre-petition lender such as LSB, even if it holds an "all

assets" lien on and security interest in all of a debtor's assets, does not have a lien on Chapter 5 avoidance claims for two reasons.

49. First, such claims are held and owned by the bankruptcy estate, and the bankruptcy estate is a separate legal entity from the pre-petition debtor. Second, even if the bankruptcy estate and the debtor are legally the same person, Chapter 5 avoidance claims only arise post-petition, once a bankruptcy case is actually filed.

50. Bankruptcy Code Section 552(a) provides that, except with respect to certain exceptions that are not applicable here, "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from a security agreement entered into by the debtor before the commencement of the case."

51. Because LSB's loan and security documents were entered into pre-petition and not post-petition, LSB, as a matter of law, does not and cannot have a lien on any Chapter 5 avoidance claims that the Waggoner Debtors might assert, including any Chapter 5 avoidance claims against RAF, as a matter of law.

52. Accordingly, the Court should find and declare as follows:

a. LSB's liens on and security interests in the personal property of the Waggoner Debtors, to the extent otherwise valid and unavoidable, do not extend to any Chapter 5 avoidance claims held or owned by the Waggoner Debtors' estates, including the Chapter 5 avoidance claims that LSB attempted to assert against RAF in Adversary No. 18-02007-rlj; and

b. If and to the extent the bankruptcy estates of the Waggoner Debtors receive any proceeds of any Chapter 5 avoidance claims in their Chapter 11 cases, the proceeds will be

unencumbered assets of the applicable bankruptcy estate and available to pay the claims of all creditors of such bankruptcy estate, including unsecured creditors.

WHEREFORE, based upon the foregoing, RAF hereby requests judgment in its favor, and against Defendant Lone Star State Bank of West Texas, as follows:

1. ON ITS FIRST CAUSE OF ACTION, for a Declaratory Judgment finding and declaring as follows:

A. That LSB's liens on and security interests in the general intangibles of the Waggoner Debtors, along with all other LSB liens on and security interests in the personal property of the Waggoner Debtors, to the extent otherwise valid and unavoidable, do not extend to any commercial tort claims that any of the Waggoner Debtors had, against RAF or any other parties, as of the April 9, 2018 Petition Date, or to the proceeds of such claims; and

B. That, if and to the extent the Waggoner Debtors, or any of them, receive any proceeds of any commercial tort claims in their Chapter 11 cases, the proceeds will be unencumbered assets of the applicable bankruptcy estate and available to pay the claims of all creditors of such bankruptcy estate, including unsecured creditors.

2. ON ITS SECOND CAUSE OF ACTION, for a Declaratory Judgment finding and declaring as follows:

A. That LSB's liens on and security interests in the personal property of the Waggoner Debtors, to the extent otherwise valid and unavoidable, do not extend to any Chapter 5 avoidance claims held or owned by the Waggoner Debtors' estates, including the Chapter 5 avoidance claims that LSB attempted to assert against RAF in Adversary No. 18-02007-rlj; and

B. That, if and to the extent the bankruptcy estates of the Waggoner Debtors receive any proceeds of any Chapter 5 avoidance claims in their Chapter 11 cases, the proceeds will be unencumbered assets of the applicable bankruptcy estate and available to pay the claims of all creditors of such bankruptcy estate, including unsecured creditors.

3. For attorneys' fees and costs of suit, to the extent otherwise allowed or authorized by law; and

4. For such other and further relief as the Court deems just and proper.

DATED: December 7, 2018.

        RINEY & MAYFIELD
        Thomas C. Riney, SBN: 16935100
        W. Heath Hendricks, SBN: 240556451
        320 South Polk Street, Suite 600
        Amarillo, Texas 79101
        Telephone: (806) 468-3200
        Facsimile: (806) 376-4509
        Email: triney@rineymayfield.com
        Email: hhendricks@rineymayfield.com

        --and--

        RAY QUINNEY & NEBEKER P.C.
        Michael R. Johnson *(Pro Hac Vice)*
        36 South State Street, Suite 1400
        Salt Lake City, UT 84111
        Telephone: (801) 532-1500
        Facsimile: (801) 532-7543
        Email: mjohnson@rqn.com

        */s/ Michael R. Johnson*
        Michael R. Johnson
        *Attorneys for Rabo AgriFinance LLC*